# IN THE COURT OF APPEALS OF IOWA

No. 17-1125
Filed May 2, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NATHAN JERRY BREHME,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Calhoun County, Thomas J. Bice (trial) and Kurt J. Stoebe (sentencing), Judges.

Nathan Brehme appeals the judgment and sentence entered after a jury found him guilty of possession of a firearm by a felon. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Nathan Brehme appeals the judgment and sentence entered after a jury found him guilty of possession of a firearm by a felon. Brehme contends the trial court erred both in denying his motion for judgment of acquittal and his motion for new trial, arguing the State failed to sufficiently prove the elements of the crime. Specifically, he argues the State failed to prove he had dominion and control over the firearms found in his residence.

**I. Background Facts and Proceedings.**

Brehme lives in a three-bedroom home in Yetter, which he shares with his three-year-old child, Catherine Smith, and Smith's child. Although the home belongs to Smith's oldest child, it appears Brehme lived in the home first. When Smith separated from her husband, Brehme offered her a place to stay, and the two became roommates. Brehme sleeps in one of the bedrooms, his child in another, and Smith's child in the third. Smith did not have a permanent bedroom but slept in one of the child's bedrooms when unoccupied.

In May or June 2016, Smith inherited five of her grandfather's firearms from her father. Because the home has only two closets—one in Brehme's bedroom and the other in a child's bedroom—Smith opted to store the firearms in Brehme's bedroom closet. At trial she explained her reasoning:

> I didn't want them in the 3-year-old's bedroom. I was married to a gun dealer and I know enough about guns that I can't put them in the basement. Our basement's not finished; so it is very moist down there, not good for a gun. I can't put them in the attic, not temperature controlled. Again, they gain moisture, they rust. And there's really—There was really no other place to put them.

She further explained, "I did not want my guns left in the three-year-old's bedroom closet because he is allowed to play in there by himself." The child is prevented from entering Brehme's bedroom by a child gate. Smith believed Brehme's bedroom closet to be "the best and safest place to store them."

The firearms are not the only belongings Smith keeps in Brehme's closet. Brehme has a fireproof safe in the closet in which he allows her to store her important documents. Brehme provided her with a key to the safe, and Smith explained that she has access to Brehme's bedroom closet:

> Q. So is it fair to say that you can go into his closets if you need to get an item out of the safe? A. Yes.
> Q. And if you needed to get a gun to sell it or whatever, you could walk into his room and grab your gun? A. Yes.

In August 2016, law enforcement officers executed a search warrant on the home and seized the five firearms from Brehme's closet. The State charged Brehme with possession of a firearm by a felon, Brehme pled not guilty, and the case proceeded to a jury trial. At the close of evidence, Brehme moved for judgment of acquittal, arguing the State failed to prove he had dominion and control over the firearms. The court denied the motion, finding a fact question had been generated on the question of whether Brehme possessed the firearms.

The jury found Brehme guilty as charged. Brehme filed a motion for new trial, renewing the arguments raised in his motion for judgment of acquittal. The court denied the motion. Brehme appeals.

**II. Sufficiency of the Evidence.**

We review sufficiency-of-the-evidence claims for correction of errors at law. *See State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). In doing so, we consider

the record evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *See id.* We will uphold the trial court's denial of a motion for judgment of acquittal if substantial evidence supports conviction. *See State v. Harris*, 892 N.W.2d 182, 186 (Iowa 2017). Evidence is substantial if it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *See id.* Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *See Huser*, 894 N.W.2d at 490.

Iowa Code section 724.26(1) (2016) states that a person who is convicted of a felony and "knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class 'D' felony." The court instructed the jury that "dominion and control" means "ownership or right to the firearm and the power or authority to manage, regulate, or oversee its use." Brehme does not dispute his status as a felon. Nor does he dispute that firearms were in his residence. He instead argues there is insufficient evidence that he knowingly possessed or exercised dominion and control over the firearms.

There are two types of possession under the law: actual or constructive. *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016). Actual possession occurs when direct or circumstantial evidence shows that the contraband was on the defendant's person at one time. *See State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010). "Possession is constructive where the defendant has knowledge of the presence of the [contraband] 'and has the authority or right to maintain control of [it].'" *State v. Cashen*, 666 N.W.2d 566, 570 (Iowa 2003) (citation omitted).

There is insufficient evidence to show Brehme was in actual possession of the firearms. They were not found on his person, and the State did not have fingerprint testing conducted to show that Brehme had ever had them on his person. The only evidence presented on this issue was Smith's testimony, and she denied that Brehme had ever touched the firearms.

We then turn to the question of whether there is sufficient evidence Brehme was in constructive possession of the firearms. The existence of constructive possession depends on the unique facts of each case. *See Reed*, 875 N.W.2d at 705. Although it may be inferred when contraband is found on property in the defendant's exclusive possession, additional proof is needed when the premises are jointly occupied. *See id.* Proximity to the contraband—although pertinent—is not enough. *See id.* The factors we consider in determining whether constructive possession exists include:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* (citation omitted).

In denying Brehme's motion for judgment of acquittal, the court found the State had generated a fact issue as to whether Brehme was in possession of the firearms. The court noted that "the guns were in a closet in [Brehme]'s bedroom, . . . the closet itself was somewhat open to view, and . . . the guns were there," as well as the length of time—"months"—that the guns were in the closet.

The court concluded that, based on this evidence, Brehme "obviously knew or should have known as a reasonable person that the guns were there."

Although the evidence cited by the district court would be sufficient to show constructive possession over contraband on the premises if the defendant was in exclusive control of the premises, the evidence here shows Brehme was not in exclusive control of the premises. Brehme shared the home with Smith. Although the closet was in his bedroom, the evidence shows Brehme gave Smith access to the bedroom and, specifically, his closet, providing Smith with a key to access the safe he kept inside it. Because Brehme was not in exclusive control of the premises in which the firearms were found, Brehme's knowledge, without more, is insufficient to show possession. *See State v. Kern*, 831 N.W.2d 149, 162 (Iowa 2013) (holding the defendant's knowledge of the presence of a "vast" marijuana operation in jointly owned premises and evidence was sufficient to show the defendant conspired in the operation but, without evidence that the defendant was more than "an agreeable bystander," it could not be extended to show that the defendant exercised dominion and control over the marijuana).

Certainly, the evidence shows that Brehme had the ability to take possession of the firearms in his closet. However, "the authority or right to maintain control includes something more than the 'raw physical ability' to exercise control." *State v. Bash*, 670 N.W.2d 135, 139 (Iowa 2003). The State must present evidence of "some proprietary interest or an immediate right to control or reduce the [contraband] to the defendant's possession." *Id.* That evidence is lacking here. Smith testified not only that Brehme had not been in control of the firearms, he had no right to control them:

> Q. Have you ever seen [Brehme] touch a gun before? A. No.
> Q. Has he ever expressed to you any interest in guns whatsoever? A. No.
> Q. All the guns in the closet belong to you? A. Yes.
> . . . .
> Q. Does Mr. Brehme have any right to determine what happens to those guns? A. No.
> Q. He can't sell them? A. No.
> Q. He can't move them? A. No. I—
> Q. He couldn't loan them out to somebody? A. No.
> Q. Because they're not his? A. Correct.
> Q. Whose decision was it— It was your decision to put the guns in the closet. A. Yes. I picked them up and put them in the closet.

This evidence was echoed by the testimony of Calhoun County Sheriff Scott Anderson. The sheriff testified that when the search warrant was executed, Smith told him that "she had inherited those firearms and that they belonged to her and that she was to pass them on to her children and grandchildren." Sheriff Anderson also testified that Smith told him she kept the firearms in Brehme's closet because "that was the most safe place." Brehme told the sheriff substantially the same information. With regard to Brehme's control over the firearms, Sheriff Anderson testified:

> Q. So the guns, as far as your investigation determined, belonged to Cathy Smith? A. Yes.
> Q. She was the owner of them? A. She said she inherited them, yes.
> Q. And you have no reason to not believe that? A. I have no reason to doubt her, no.
> Q. When you talked to Mr. Brehme, he denied that the guns were his? A. That's true.
> Q. He said that he had no interest in guns? A. That's also true.
> . . . .
> Q. Do you know if he had any property rights to the guns at all? A. No, I do not.
> Q. Was any fingerprint analysis done to determine whether he had ever touched them? A. There was not.

Q. Did you ever talk to a witness . . . who had seen him touch them? A. No.

Q. And you personally didn't see him touch them? A. No.

Deputy Sheriff Don Heimgartner testified similarly, admitting that the only evidence of Brehme's possession of the firearms "is the fact the guns were in that room along with [Brehme's identification]."

Viewing the record in the light most favorable to the State, there is insufficient evidence to support Brehme's conviction. The State failed to present evidence that Brehme had actual possession of the firearms. The evidence failed to show Brehme constructively possessed the firearms given the joint possession of the premises. Accordingly, we reverse the judgment and sentence for possession of a firearm by a felon and remand for dismissal of the charge. Having resolved this case on the merits of Brehme's first argument, we need not entertain his argument concerning the denial of his motion for new trial.

**REVERSED AND REMANDED.**